## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PARROT S.A., PARROT DRONES S.A.S., and )
PARROT INC.                            )
                                       )         C. A. No.: _____
            Plaintiffs,                )
                                       )         **JURY TRIAL DEMANDED**
        v.                             )
                                       )
QFO LABS, INC.                         )
                                       )
            Defendant.                 )
                                       )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Parrot S.A., Parrot Drones S.A.S., and Parrot Inc. (collectively "Parrot"), by

and through its undersigned counsel, files this Complaint for a declaratory judgment against

QFO Labs, Inc. ("QFO"), and alleges as follows:

## NATURE OF ACTION

1.      Parrot seeks a declaration that U.S. Patent Nos. 7,931,239 ("the '239 Patent") and

9,073,532 ("the '532 Patent") (collectively, "the Patents-In-Suit") are invalid and/or not

infringed by the manufacture, use, sale, offer for sale or importation of Parrot's drone products,

including the Parrot Bebop Drone, the Parrot Bebop 2 Drone, Parrot AR.Drone 2.0, Parrot

Rolling Spider, Airborne Cargo Drone, Airborne Night Drone, and Hydrofoil Drone (collectively

"Products-At-Issue").

2.      Parrot brings this action to lift the cloud created by the imminent threat of a

lawsuit by QFO against Parrot for alleged infringement of the Patents-In-Suit.  Without

declaratory relief, the threat of suit poses a substantial risk of injury to Parrot as well as its

subsidiaries, suppliers, and customers who make, use, sell, offer for sale or import Parrot's drone

products, including the Products-At-Issue.  The continued existence and threat of suit of these patents harms Parrot's manufacture, marketing, sale and use of its drone products.

3.      QFO initiated licensing negotiations with Parrot concerning the Patents-In-Suit. During those negotiations, QFO asserted that the Patents-In-Suit cover Parrot's drone products and QFO threatened to bring a patent infringement action against Parrot if Parrot is unwilling to license or purchase the Patents-In-Suit.  Given QFO's acts and statements, and Parrot's manufacture, marketing, and sale of its drone products in the United States, a real, immediate, and substantial dispute exists between the parties concerning the Patents-In-Suit for which Parrot now seeks declaratory relief.

## THE PARTIES

4.      Parrot S.A. is a public limited company (*société anonyme*) organized and existing under the laws of the Republic of France, with its principal place of business located at 174, quai de Jemmapes 75010 Paris, France.

5.      Parrot Drones S.A.S. is a simplified joint stock company (*société par actions simplifiée*) organized and existing under the laws of the Republic of France, with its principal place of business located at 174, quai de Jemmapes 75010 Paris, France.  Parrot Drones S.A.S. is a wholly-owned subsidiary of Parrot S.A.

6.      Parrot Inc. is a New York corporation with a principal place of business at 535 Mission Ste. 2602, San Francisco, CA 94105.  Defendant Parrot, Inc. is a wholly-owned subsidiary of Parrot Drones S.A.S.

7.      On information and belief, QFO Labs, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 4749 Washburn Ave S Minneapolis, MN 55410.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Parrot's request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

9.      QFO is subject to general personal jurisdiction in this judicial district based upon its purposeful, systematic, and continuous contacts with Delaware, including its formation under the laws of Delaware, and maintaining a registered agent in this judicial district.

10.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400 because QFO resides in this judicial district and because QFO is subject to personal jurisdiction within this judicial district.

## FACTUAL BACKGROUND

### A.      Parrot's Drone Products

11.      A drone is a unmanned aircraft guided by remote control.  Drones have a number of applications, both commercial and recreational, and the market for drones has expanded rapidly in recent years.

12.      Parrot is one of the world's leading manufacturers of drones.  Parrot designs, manufactures, markets and sells a variety of drones having a number of applications.  Parrot has expended substantial revenues researching, developing, launching and commercializing its drone products.

13.      Among the drones that Parrot markets, sells and/or offers for sale in the United States, either currently or in the past, are the Parrot Bebop Drone, the Parrot Bebop 2 Drone, Parrot AR.Drone, Parrot AR.Drone 2.0, Parrot Rolling Spider, Airborne Cargo Drone, Airborne Night Drone, and Hydrofoil Drone.

### B.      The Patents-In-Suit

14.      Upon information and belief, QFO holds title (by assignment) to the '239 Patent, entitled "Homeostatic Flying Hovercraft," issued on April 26, 2011.  The '239 Patent is directed generally to homeostatic flying hovercraft and to a radio controlled flying saucer toy employing the principals of a homeostatic flying hovercraft.  A true and correct copy of the '239 Patent is attached hereto as Exhibit A.

15.      Upon information and belief, QFO holds title (by assignment) to the '532 Patent, entitled "Homeostatic Flying Hovercraft," issued on July 7, 2015.  The '532 Patent is a continuation of the '239 Patent.  Like the '239 Patent, the '532 Patent is directed generally to homeostatic flying hovercraft and to a radio controlled flying saucer toy employing the principals of a homeostatic flying hovercraft.  A true and correct copy of the '532 Patent is attached hereto as Exhibit B.

### C.      Parrot's Dispute With QFO Regarding The Patents-In-Suit

16.      In August 2014, representatives from QFO approached Parrot regarding the Patents-In-Suit.  QFO subsequently provided Parrot with a copy of the '239 Patent as well as the then-pending claims of the patent application that ultimately issued as the '532 Patent.  QFO also sent Parrot a claim chart purporting to show how Parrot's AR Drone infringes certain claims of the '239 Patent.

17.      Throughout 2015, Parrot and QFO continued to have discussions regarding the Patents-In-Suit.  On October 19, 2015, Parrot and QFO entered into a non-disclosure agreement ("NDA").  The NDA was drafted by QFO and expressly contemplates the possibility of litigation between Parrot and QFO regarding the Patents-In-Suit:  "All Confidential Information related to any discussions or efforts to resolve any patent disputes between the parties shall not be the subject of any discovery requests of any kind, including without limitation any interrogatory,

request for admission, document request or question propounded to any witness that might require disclosure of such Confidential Information as part of any answer."

18.     In January 2016, QFO provided Parrot with a proposed license agreement for the Patents-In-Suit.  In follow up discussions between the parties, QFO warned that if it did not receive an adequate response, the proposed license agreement would be withdrawn and QFO would "pursue [its] other available options."  Parrot understood this statement to be a threat by QFO that it would bring a suit for patent infringement against Parrot and/or its customers.

19.     In April 2016, Parrot and QFO held an in-person meeting to discuss a possible business arrangement between Parrot and QFO.  During that meeting and in subsequent correspondence, QFO demanded to be compensated for Parrot's alleged infringement of the Patents-In-Suit.

20.     Parrot denies that it is has infringed the Patents-In-Suit and further alleges that each of the claims of the Patents-In-Suit are invalid.

21.     QFO's allegations that Parrot has infringed the Patents-In-Suit, its demand for compensation for Parrot's alleged past infringement, and its implicit threats to file a patent infringement lawsuit create an actual case or controversy regarding the validity and alleged infringement of the Patents-In-Suit.  QFO's infringement allegations threaten actual and imminent injury to Parrot that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Absent a declaration of non-infringement, QFO's continued wrongful assertions of infringement against Parrot related to the alleged manufacture, use, sale, offer for sale and/or importation of Parrot's drone products, including the Products-At-Issue will harm Parrot and its customers.

## COUNT I

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '239 PATENT

22.    The allegations of paragraphs 1-21 are incorporated by reference as if fully set forth herein.

23.    An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '239 Patent.

24.    Claims 1-10 of the '239 Patent are invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and 112, and nonstatutory common law doctrines.

25.    By way of example and without limiting the grounds of invalidity that will be asserted in this action, each claim of the '239 Patent is invalid under 35 U.S.C. § 103 based on the disclosure of the Draganflyer III remote control helicopter, and/or U.S. Patent Application 2002/0104921 to Louvel, either alone or in combination with additional prior art references, including but not limited to, U.S. Patent Application 2002/0106966, U.S. Patent No. 5,128,671, U.S. Patent No. 6,260,796 and/or M. Gordon et al., "Rotorcraft Aerial Robot-Challenges and Solutions," Georgia Institute of Technology, School of Aerospace Engineering (1993), and/or the knowledge of a person of ordinary skill in the art.

26.    By way of further example and without limiting the grounds of invalidity that will be asserted in this action, each claim of the '239 Patent is invalid under 35 U.S.C. § 112 because the specification fails to either enable or provide written description support for the "thruster," "homeostatic control system," "controls means," "sensor system," and "control circuitry" limitations recited by the claims of the '239 Patent.  The '239 Patent provides only a cursory description of these limitations such that a person of ordinary skill would not be able to practice

6

them without undue experimentation and such that the specification fails to demonstrate that the inventors were in possession of the full scope of their purported "invention" at the time of filing.

27.     Parrot expressly reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery.

28.     Parrot seeks a declaratory judgment that each claim of the '239 Patent is invalid.

## COUNT II

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '239 PATENT

29.     The allegations of paragraphs 1-28 are incorporated by reference as if fully set forth herein.

30.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Parrot's manufacture, use, sale, offer for sale, or importation of its drone products, including the Products-At-Issue, infringes any valid claim of the '239 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

31.     By way of example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they are not an "RC homeostatic flying hovercraft" as required by the claims of the '239 Patent.

32.     By way of further example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they do not contain "generally downwardly directed thrusters" as required by the claims of the '239 Patent.

33.     By way of further example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they do not contain a "homeostatic control system" that contains "at least a three

dimensional, three-axis sensor system and associated control circuitry that dynamically determines a gravitational reference other than by dead reckoning for use by said homeostatic control system in automatic control of said thrusters to maintain homeostatic stabilization in said desired orientation," as required by the claims of the '239 Patent.  Likewise, Parrot's drone products, including the Products-At-Issue, do not practice the step of "using control circuitry in said flying hovercraft to automatically and dynamically control a thrust produced by each of said thrusters to achieve and homeostatically maintain said actual orientation of said flying hovercraft in response to said desired orientation communicated to said flying hovercraft and said actual orientation determined by said sensor system in said flying hovercraft without additional control information communicated to said flying hovercraft," as required by claim 10 of the '239 Patent.

34.     Parrot expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

35.     Plaintiffs seek a declaratory judgment that making, using, offering to sell, selling, and importing Parrot's drone products, including the Products-At-Issue, does not and will not infringe any valid claim of the '239 Patent.

## COUNT III

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '532 PATENT

36.     The allegations of paragraphs 1-35 are incorporated by reference as if fully set forth herein.

37.     An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '532 Patent.

38.     Claims 1-24 of the '532 Patent are invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101 *et seq.*,

including but not limited to 35 U.S.C. §§ 102, 103, and 112, and nonstatutory common law doctrines.

39.     By way of example and without limiting the grounds of invalidity that will be asserted in this action, each claim of the '532 Patent is invalid under 35 U.S.C. § 103 based on the disclosure of the Draganflyer III remote control helicopter, and/or U.S. Patent Application 2002/0104921 to Louvel, either alone or in combination with additional prior art references, including but not limited to, U.S. Patent Application 2002/0106966, U.S. Patent No. 5,128,671, U.S. Patent No. 6,260,796 and/or M. Gordon et al., "Rotorcraft Aerial Robot-Challenges and Solutions," Georgia Institute of Technology, School of Aerospace Engineering (1993), and/or the knowledge of a person of ordinary skill in the art.

40.     By way of further example and without limiting the grounds of invalidity that will be asserted in this action, each claim of the '532 Patent is invalid under 35 U.S.C. § 112 because the specification fails to either enable or provide written description support for the "thruster," the "homeostatic control system," and "controls system" limitations recited by the claims of the '532 Patent.  The '532 Patent provides only a cursory description of these limitations such that a person of ordinary skill would not be able to practice them without undue experimentation and such that the specification fails to demonstrate that the inventors were in possession of the full scope of their purported "invention" at the time of filing.

41.     Parrot expressly reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery.

42.     Parrot seeks a declaratory judgment that each claim of the '532 Patent is invalid.

## COUNT IV

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '532 PATENT

43.     The allegations of paragraphs 1-42 are incorporated by reference as if fully set forth herein.

44.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Parrot's manufacture, use, sale, offer for sale, or importation of its drone products, including the Products-At-Issue, infringes any valid claim of the '532 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

45.     By way of example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they are not a "RC flying hovercraft" as required by claims 1-20 of the '532 Patent.

46.     By way of further example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they do not contain two or more "thrusters" as required by each claim of the '532 Patent.

47.     By way of further example and without limiting the grounds of non-infringement that will be asserted, Parrot's drone products, including the Products-At-Issue, do not infringe because they do not contain a "homeostatic control system" that includes "at least a three dimensional, three-axis sensor system and associated control circuitry that dynamically determines a gravitational reference other than by dead reckoning alone for use by the homeostatic control system in automatic control of said thrusters to maintain homeostatic stabilization in the desired orientation," "associated control circuitry that dynamically determines a gravitational reference other than by dead reckoning alone for use by the control system in automatic control of said thrusters to maintain stabilization of the RC flying hovercraft in the desired orientation that is responsive to radio frequency (RF) communications from the RC

controller," or a "control system including at least a three dimensional, three-axis sensor system and associated control circuitry that dynamically determines a gravitational reference other than by just dead reckoning for use by the control system in determining an actual orientation of the craft relative to the gravitational reference." as required by the claims of the '532 Patent.

48.     Parrot expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

49.     Plaintiffs seek a declaratory judgment that making, using, offering to sell, selling, and importing Parrot's drone products, including the Products-At-Issue, does not and will not infringe any valid claim of the '532 Patent.

## JURY DEMAND

50.     Pursuant to Federal Rule of Civil Procedure 38(b), Parrot demands a trial by jury of all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Parrot requests that judgment be entered in favor of Parrot and against QFO:

a.     Declaring each claim of the '239 Patent invalid;

b.     Declaring that the manufacture, use, sale, offer of sale, or importation of Parrot's drone products, including the Parrot Bebop Drone, the Parrot Bebop 2 Drone, Parrot AR.Drone, Parrot AR.Drone 2.0, Parrot Rolling Spider, Airborne Cargo Drone, Airborne Night Drone, and Hydrofoil Drone, does not infringe any valid claim of the '239 Patent.

c.     Declaring each claim of the '532 Patent invalid;

d.      Declaring that the manufacture, use, sale, offer of sale, or importation of Parrot's drone products, including the Parrot Bebop Drone, the Parrot Bebop 2 Drone, Parrot AR.Drone, Parrot AR.Drone 2.0, Parrot Rolling Spider, Airborne Cargo Drone, Airborne Night Drone, and Hydrofoil Drone, does not infringe any valid claim of the '532 Patent.

e.      Enjoining QFO from enforcing the Patents-In-Suit;

f.      A finding that this case is exceptional under 35 U.S.C. § 285;

g.      Awarding Parrot its costs and attorneys' fees; and

h.      Such other relief as this Court or a jury may deem proper and just under the circumstances.

Dated:  August 8, 2016

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James M. Lennon*
_____
James M. Lennon (No. 4570)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-5009
jlennon@ycst.com

*Attorneys for Plaintiffs Parrot S.A., Parrot Drones*
*S.A.S., and Parrot Inc.*

*Of Counsel:*

Matthew A. Traupman
James M. Glass
Gregory Wyckoff
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave.
New York, NY  10010
(212) 849-7000